| 816 ENGLAND STREET, ASHLAND, VA 23005 (PC 1401) |
| --- |

Approved by: _____

## LEASE AGREEMENT

This Lease Agreement ("**Lease**") is made and entered into this 25 __ day of October, 2015 by and between SUNOCO NORTH CAROLINA ACQUISITION II, LLC, a Maryland limited liability company, with a business address of 8350 N. Central Expressway, Suite M2185, Dallas, Texas 75206 ("**Landlord**"), and NADIAD, INC., a Virginia corporation with a business address of 4445 Corporation Lane, Suite 264, Virginia Beach, Virginia 23462 ("**Tenant**").

## WITNESSETH:

WHEREAS, Landlord owns that certain tract of real property, more particularly described in **Exhibit A** attached hereto, and commonly known as 816 ENGLAND STREET, ASHLAND, VA 23005 ("**Premises**"); and,

WHEREAS, Landlord or Landlord's affiliate has previously installed on the Property certain petroleum products underground storage tanks, lines, dispensing pumps, meters and measuring devices, in-tank monitoring devices, Stage II vapor recovery systems, canopies, lights, intercommunication systems (if applicable), elevated concrete islands and parking strips or pads and related electrical and piping systems (collectively, the "**Motor Fuels Equipment**") necessary for the operation of a self-service petroleum products retail sales and dispensing facility (the "**Motor Fuels Facility**"); and,

WHEREAS, Quik-Way Retail Associates II, Ltd. ("**QWRAII**") owns the Motor Fuel Equipment and Motor Fuels Facility on the Premises; and,

WHEREAS, Tenant, Landlord and QWRAII desire that Tenant facilitate QWRAII's operation of the Motor Fuels Facility in the manner described more fully in a Consignment Agreement (the "**Consignment Agreement**") entered into by and between QWRAII and Tenant concurrently herewith and attached hereto as **Exhibit B**; and,

WHEREAS, by this Lease, Landlord desires to lease a portion of the Premises to Tenant; and,

WHEREAS, Tenant intends to operate a convenience store business on the Premises according to the terms hereof and facilitate the operation of QWRAII's Motor Fuel Facility located on the Premises per the terms of the Consignment Agreement.

NOW, THEREFORE, for and in consideration of these promises and the mutual covenants and agreements hereinafter contained and the mutual benefits to be derived herefrom, the parties agree as follows:

1.     **PREMISES.** Landlord leases to Tenant, and Tenant leases from Landlord, the land, building and improvements at the Premises; provided however, QWRAII shall retain the ownership and responsibility for the Motor Fuels Equipment and Motor Fuels Facility (as set forth in the Consignment Agreement).

2.     **TERM.**

    (a)     Unless sooner terminated as herein provided, the term of this Lease shall be for a period of twelve (12) months (the "**Term**"). The Term shall commence on the day Landlord provides Tenant possession of the Premises (the "**Rent Commencement Date**"); provided that if the Rent Commencement Date is a date other than the first day of a calendar month, the Term shall be extended for the number of days remaining in the calendar month in which the Rent Commencement Date occurs. The



---

### 816 ENGLAND STREET, ASHLAND, VA 23005 (PC 1401)

---

Lease shall expire at midnight on the last day of the Term without the necessity of any notice from either party to the other to terminate the same. Tenant hereby waives notice to vacate the Premises and agrees that Landlord shall be entitled to the benefit of all provisions of law respecting summary recovery of possession from a tenant holding over to the same extent as if any statutory notice had been given. Landlord and Tenant each agree to execute the Commencement Date Acknowledgement agreement, attached as **Exhibit C**, which establishes the Rent Commencement Date and the expiration date of the Term. As used in this Lease, the "Term" shall mean the initial Term set forth above, as may be extended or reduced pursuant to the terms of this Lease or agreement of the parties.

All obligations to perform any action and/or pay any sums due or to become due to either party from the other under this Lease shall survive the expiration or earlier termination of this Lease and remain continuing obligations until performed and/or paid. All indemnity obligations under this Lease shall likewise survive the expiration or earlier termination of this Lease. If Tenant is unable to obtain possession of the Premises due to any act or condition (including, but not limited to, the failure of any existing tenant to vacate the Premises (or any part thereof) or an event of force majeure), Landlord shall not be liable for any loss, damage or cost resulting therefrom.

(b)  Landlord hereby grants to Tenant the conditional right, exercisable at Tenant's option, to renew the Term of the Lease for one (1) period of two (2) years, exercisable as hereinafter provided. If properly exercised and if the conditions applicable thereto have been satisfied, the renewal term shall commence immediately following the end of the initial Term provided in Section 2(a) of the Lease, and, in such event, such renewal term (the **"Renewal Term"**) shall be deemed to be part of the Term. The right of renewal herein granted to Tenant shall be subject to, and shall be exercised strictly in accordance with, the following terms and conditions.

Tenant shall exercise the renewal option with respect to the Renewal Term by giving Landlord written notice of the exercise thereof (the **"Option Notice"**) not later than six (6), nor earlier than eight (8), months prior to the expiration of the initial Term. Time is of the essence as to all dates pertaining to Tenant's exercise of the renewal option. If an Option Notice is not given timely or if Tenant does not exercise the renewal option or if Tenant has been in default under the Lease at any time during the Lease Term or if Tenant has assigned the Lease or sublet all or any portion of the Premises, then at Landlord's election, the Option Notice shall be void, and Tenant's right of renewal with respect to the unexercised renewal option and uncommenced Renewal Term shall thereupon and thereafter lapse, terminate and be of no further force or effect. In no event shall Tenant have the right to renew the term of the Lease beyond the expiration of the Renewal Term.

During the Renewal Term, all of the terms, conditions, covenants and agreements set forth in the Lease shall continue to apply and be binding upon Landlord and Tenant.

Tenant hereby specifically acknowledges and agrees that the time limitations upon the exercise of the Renewal Term will be strictly enforced, that any attempt to exercise any option period at any other time shall be void and of no force or effect, and that if the Renewal Term is not exercised within the applicable time period, Landlord intends immediately thereafter to undertake appropriate efforts relating to the marketing or management of the Premises. The period of time within which any option period may be exercised shall not be extended or enlarged by reason of Tenant's inability to exercise such option period because of any provisions of this Section or for any other reason whatsoever.

DocuSign Envelope ID: 01FD5360-113F-45DE-9EC6-A14C55F9C8EE

| 816 ENGLAND STREET, ASHLAND, VA 23005 (PC 1401) |
| :---: |

3.    **RENT.**

(a)    Tenant agrees to pay Landlord, via electronic funds transfer ("**EFT**"), base rent in the following amounts (the "**Base Rent**") per month for each and every month during the Term, in advance on or before the first (1st) day of each month without notice, deduction or offset:

| Term | Monthly Base Rent |
| :---: | :---: |
| 10/28/2015 to 4/30/2016 | $4,000.00 |
| 5/1/2016 to 10/31/2016 | $6,000.00 |
| 11/1/2016 to 10/31/2018 | $6,000.00 |

Tenant has executed documents necessary to allow Landlord to EFT from Tenant's bank account all amounts due under this Lease in the authorization form attached hereto as **Exhibit D**.  Tenant agrees with the execution of this Lease, and from time to time as necessary, to provide any further documents necessary to allow Landlord to EFT from Tenant's bank account all amounts due under this Lease. Tenant agrees to maintain sufficient balances/funds in said bank account to pay such EFTs when so initiated by Landlord.

Any payments of Base Rent and additional rent by Tenant or acceptance by Landlord of a lesser amount than shall be due from Tenant to Landlord shall be treated as a payment on account and may be applied in Landlord's sole and absolute discretion.  The acceptance by Landlord of payment of a lesser amount with or without an endorsement or statement thereon, or upon any communication accompanying such payment, that such lesser amount is payment in full, shall be given no effect, and shall not constitute an accord and satisfaction or settlement, and Landlord may accept and apply such payment without prejudice to any rights or remedies which Landlord may have.

(b)    In addition to payment of all base rents, certain taxes, certain public or private assessments and governmental impositions and the cost of insurance, as herein provided, Tenant shall pay all operating costs and expenses in connection with the Premises.  All payments of money from Tenant to Landlord required to be paid under this Lease other than Base Rent shall be "**Additional Rent**" hereunder.  Additional Rent and Base Rent shall hereinafter together be referred to as "**Rent**".

4.    **USE.**  The Premises shall be used for the retail sale, rental or provision of merchandise and services customarily sold, rented or provided from time to time, at stores operated as "**retail convenience stores**" in the marketplace in which the Premises is located as of the date of this Lease and for no other purpose.  The Premises may not be used for any other purpose without Landlord's prior written consent, which consent is in Landlord's sole discretion.  Tenant shall use its commercially reasonable efforts to prohibit any on-premises consumption of beer, wine or other alcoholic beverages and/or smoking upon the Premises, and to minimize loitering and trash and odor problems materially affecting the Premises. Notwithstanding anything to the contrary, the following uses are not permitted:

(1)    a sexually-oriented business or use (including, but not limited to, a topless bar, gentlemen's club, an adult bookstore, a massage parlor, a modeling studio, or tanning parlor) or any psychic, fortune teller, card reader or similar establishment;

DocuSign Envelope ID: 01FD5360-113F-45DE-9EC6-A14C55F9C8EE

| 816 ENGLAND STREET, ASHLAND, VA 23005 (PC 1401) |
|---|

(2)    a pawn shop or shop where check cashing is the primary business;

(3)    a flea market;

(4)    a swap shop or "outlet store" selling used, damaged or discontinued merchandise;

(5)    a massage parlor or funeral parlor;

(6)    any living quarters, sleeping apartments, lodging rooms or residential use of any kind;

(7)    an off-track betting parlor;

(8)    any use involving the sale or lease of new or used motor vehicles;

(9)    a body piercing shop or tattoo parlor;

(10)    a dry cleaning establishment;

(11)    half-way house, homeless shelter or other similar use;

(12)    kennel, veterinary office, animal hospital or animal shelter or other establishment that sells, keeps or boards animals;

(13)    sale or display or firearms;

(14)    display or use of any circus, carnival, amusement rides, arcade type games;

(15)    the sale, use, storage, rental, display, or offering of pornographic or sexually explicit magazines, video tapes, compact discs, digital video discs, similar literature or items of merchandise;

(16)    the sale of paraphernalia designed for use with illicit drugs and/or the sale, use, storage, rental, display, or offering of any item, in Landlord's sole judgment, that is intended or designed for use in ingesting, inhaling or otherwise consuming an illegal drug or from manufacturing or processing an illegal drug, including but not limited to pipes, tubes, roach clips, instructions or descriptive materials, or containers designed for concealing illegal drugs or paraphernalia;

(17)    the sale, use, storage, rental, display, or offering of controlled substances or illegal substances, including but not limited to synthetic drugs and bath salts; or

(18)    any use that would violate any restrictive covenant affecting the Premises.

Tenant, at Tenant's sole cost and expense, agrees to conduct its use of the Premises in compliance and conformity with all laws and rules, codes, regulations and ordinances of any municipal, state, federal and/or any other governmental authority and any and all lawful requirements or orders of any properly constituted municipal, state, federal or other governmental board or authority, present or future, including without limitation those of any health officer, fire marshal, building inspector or other official (collectively, the "**Laws**"), in anyway relating to use or occupancy of the Premises, including, without limitation, procuring any permits and licenses required for the transaction of business in the Premises throughout the Term.

**5.    UTILITIES.**  Tenant shall arrange for, and be responsible for paying all utility services, including electrical, gas and water, at the Premises.  Tenant shall be responsible for paying for waste

| 816 ENGLAND STREET, ASHLAND, VA 23005 (PC 1401) |
| --- |

disposal at the Premises. Landlord shall not be liable to Tenant in damages or otherwise for the quality, quantity, failure, unavailability or disruption of any utility service and the same shall not constitute a termination of this Lease, constitute an actual or constructive eviction of Tenant, or entitle Tenant to an abatement of Rent.

**6.      TAXES.** Landlord and Tenant shall each pay all taxes levied upon their respective articles of personal property, including trade fixtures and inventory, or levied on their respective operations, located on the Premises. Landlord shall pay any and all taxes or assessments levied against the real estate underlying the Premises.

**7.      MAINTENANCE.** At all times during the Term, Tenant, at Tenant's sole cost and expense, agrees to keep the Premises (including but not limited to the foundation, structural soundness, roof and the interior and exterior of the building, the mechanical, electrical, plumbing, heating and air conditioning equipment, landscaped areas, surface of the parking and driveway areas including striping, and with respect to the building all required and necessary repairs to and replacements of the doors, door openers, door fixtures, windows, window frames and moldings, glass, floor, walls, wall coverings, plumbing and sewage equipment, systems, facilities and lines within the Premises, including free flow to the main sewer line, fixtures, utility meters, fire extinguishers) in good repair and condition, including but not limited to the replacement of all such improvements and fixtures located on the Premises; *provided however*, the Motor Fuels Equipment and Motor Fuels Facility shall be maintained by QWRAII per the terms and conditions of the Consignment Agreement). Tenant shall arrange for regular, prompt, and reliable trash removal for all trash generated at or associated with the Premises, at Tenant's sole expense, using containers and dumpsters approved by Landlord and at such times in such manner, and in such locations, as Landlord may reasonably direct. Tenant shall provide extermination services for the Premises on a quarterly basis, or more often if necessary. Tenant shall not remove the HVAC unit(s) from the Premises at any time. If any repairs and/or replacements required to be made by Tenant hereunder are not made within twenty (20) days after written notice thereof by Landlord to Tenant, such failure shall constitute an Event of Default under this Lease, and Landlord may, at its option, make any or all such repairs and/or replacements without prior notice or liability to Tenant for any loss or damage which may result to Tenant's business by reason of such repairs and/or replacements (including, without limitation, damage to Tenant's business). Landlord may make repairs and/or replacements without notice to Tenant if necessary in the event of an emergency. If Landlord makes any of the foregoing repairs and/or replacements, Tenant shall pay Landlord, within five (5) days of demand therefor, the cost of such repairs or replacements, as applicable, plus an administrative repair fee equal to twenty percent (20%) of the cost of such repairs and/or replacements.

**8.      ALTERATIONS.** Tenant shall not have the right to make any improvements or alterations that affect the structure, roof, building systems or outward appearance of the Premises, without Landlord's prior written consent, in Landlord's sole discretion. Tenant shall submit to Landlord complete and detailed plans and specifications for such work at the time approval is sought. Any improvements or alterations (including, without limitation, lighting fixtures) made to or installed in the Premises shall be in compliance with all insurance requirements and regulations and ordinances of governmental authorities and shall, upon the expiration or sooner termination of the Term, become the property of Landlord; provided, however, Landlord may, at its option, require Tenant, at Tenant's sole cost and expense, to remove any such improvements or alterations at the expiration or sooner termination of the Term and to repair any damages to the Premises caused by such removal. All improvements or alterations will be made in a good workmanlike manner without cost to Landlord, and shall be free and clear of mechanics' and materialmen's liens; provided that if any such lien is filed, Tenant shall, within five (5) days after the filing of such lien, promptly bond or discharge the same. If Tenant shall fail to cause such lien or notice of lien to be discharged or bonded within five (5) days after the filing thereof, then, in addition to any other rights and remedies available to Landlord at law, or in equity or under this Lease, Landlord may, but

DocuSign Envelope ID: 01FD5360-113F-45DE-9EC6-A14C55F9C8EE

| 816 ENGLAND STREET, ASHLAND, VA 23005 (PC 1401) |
| --- |

shall not be obligated to, discharge or bond off the same by paying the amount claimed to be due or posting a bond, and the amounts so paid by Landlord and all costs and expenses, including reasonable attorneys' fees, incurred by Landlord in paying, bonding off or procuring the discharge of such lien or notice of lien, shall be due and payable by Tenant to Landlord as additional rent within five (5) days of Landlord's demand therefor.  Tenant shall indemnify Landlord and hold Landlord harmless from and against any claims against Tenant, the Premises or in connection with work, labor, services or materials performed or furnished to Tenant in connection with such Tenant's work or other construction of the Premises.  Tenant shall require any contractor of Tenant performing work on the Premises to carry and maintain, at no expense to Landlord: (a) commercial general liability insurance, including contractors liability coverage, contractual liability coverage, completed operations coverage, broad form property damage endorsement and contractor's protective liability coverage, providing protection with limits for each occurrence of not less than Two Million Dollars ($2,000,000); and (b) workers' compensation or similar insurance in form and amounts required by any Laws.  **It is expressly acknowledged and understood that Landlord does not consent, and has not by the execution and delivery of this Lease consented, to the imposition by any party whomsoever of any liens upon Landlord's interest in the Premises.**

9.  **TRADE AND OTHER FIXTURES; SIGNS.**

(a)  Subject to the approval of local governing authorities and the acquisition of any required permits, and further subject to Section 8 hereof, Tenant may install, at its sole cost and expense, such equipment and trade fixtures as are reasonably necessary for the operation of its business (the "**Fixtures**") at the Premises.  The Fixtures may include, without limitation, sales or display counters, communications equipment and Tenant's typical exterior imaging, signs, banners and other advertising displays.  In no event shall this subsection (a) apply to the erection of signs on or at the Premises, which should be governed by subsection (b) below.  No vending machines or outdoor telephones or other units shall be permitted to be used by Tenant.

(b)  The size, design, content, character and location of any sign(s) in, on or upon the Premises shall be subject to Landlord's prior written approval, which approval may be withheld in Landlord's sole and absolute discretion.  All sign permits which are required for any such signs shall be obtained and paid for by Tenant.  Tenant shall submit to Landlord detailed drawings of all proposed signs for review and approval by Landlord prior to installation or utilization of the signs.  In all events, hand written signs are strictly prohibited.  All signs shall be maintained by Tenant at all times in a first class condition, operating order and repair.  Tenant shall commence to repair any of Tenant's signs which have been damaged within five (5) days after such damage occurs.  Prior to the expiration or early termination of the Term hereof, Tenant shall remove all signs in or on the Premises and shall repair any damage, including the filling of holes caused by the installation or removal of the signs.

10.  **PERMITS/LICENSES.**  Landlord hereby grants to Tenant, at Tenant's sole cost and expense, the right to apply for and obtain, in the name of Landlord (provided Landlord must receive a copy of any proposed application fifteen (15) days prior to submission for Landlord's approval), any permits (excluding permits required in connection with the sale of alcoholic beverages) or licenses required by applicable governmental authorities necessary or desirable for Tenant to construct and perform maintenance, remodeling, alterations and repairs at the Premises, or to otherwise use the Premises in accordance with the terms and conditions of this Lease.

11.  **CASUALTY DAMAGE.**

| **816 ENGLAND STREET, ASHLAND, VA 23005 (PC 1401)** |
|---|

(a)     Unless this Lease is terminated as provided for below, if fire, the elements or other casualty damages the Premises (other than the Motor Fuels Equipment and/or the Motor Fuels Facility), Tenant shall promptly repair such matters ("**Restoration Work**") to its condition just prior to the damage. Tenant's obligation for Rent shall not be abated because of destruction or damage to the Premises. Tenant agrees to diligently pursue issuance of all building or other permits required for such Restoration Work. If Tenant has not completed the Restoration Work within ninety (90) days from the date of such damage, or within such additional period of time which Landlord approves in writing, Landlord shall have the right to take over and complete such Restoration Work at Tenant's cost.  Tenant shall pay Landlord, within five (5) days of demand therefor, the cost of such Restoration Work plus a repair fee equal to twenty percent (20%) of the cost of such Restoration Work.

(b)     If the Premises is damaged by fire, the elements or other casualty to the extent of fifty percent (50%) or more of the replacement cost thereof, during the last year of the Term, Tenant may terminate this Lease as of the date of the damage by written notice to Landlord within thirty (30) days after said date.  Tenant shall pay to Landlord, prior to the termination date, an amount equal to the Rent payable under this Lease to the date of such termination.  If the Lease is terminated under this Section 11(b), all of the insurance proceeds payable for the Premises shall be paid directly to Landlord.

In any event, Tenant shall give Landlord prompt written notice of any accident, fire or damage occurring on or to the Premises.

12.   **INSURANCE.**

(a)     (i) Landlord agrees to maintain, at its expense, a standard fire and extended coverage property insurance policy on the Premises (excluding Tenant's equipment and/or other personal property located on the Premises).  The policy shall insure the Premises to one hundred percent (100%) of replacement cost throughout the Term.  The policy shall be endorsed to include a mutual waiver of subrogation.

(ii) Tenant agrees to maintain, at its expense, a standard fire and extended coverage property insurance policy on Tenant's equipment and/or personal property on the Premises.  The policy shall insure such equipment and personal property to one hundred percent (100%) of replacement cost throughout the Term.  The policy shall be endorsed to include a mutual waiver of subrogation.

(b)     Tenant shall, at its own expense, maintain in full force and effect continuously throughout the Term (i) workers compensation insurance and employer's liability insurance to the extend required by the law, and (ii) public liability insurance covering operations on, and omissions or obligations with respect to the Premises with combined single limit coverage of $1,000,000.00 per occurrence and $2,000,000.00 in the aggregate.

(c)     Tenant shall maintain in full force and effect continuously throughout the Term (i) business income insurance in an amount not less than $125,000, and (ii) liquor liability insurance in an amount not less than $1,000,000 each incident and $2,000,000 aggregate if Tenant sells alcoholic beverages.

(d)     All Tenant policies and certificates of insurance shall evidence that Tenant's insurance policies required pursuant to the provisions of this Lease (i) name Tenant as the insured, with Landlord as an additional insured and that an endorsement be attached providing for this coverage; (ii) contain a standard mortgagee endorsement satisfactory to Landlord and Landlord's mortgagee(s); (iii) be primary insurance as to all claims thereunder and provide that any insurance carried by Landlord or any other party is excess and is non-contributing with the subject insurance coverage; (iv) contain cross-liability

| 816 ENGLAND STREET, ASHLAND, VA 23005 (PC 1401) |
| --- |

coverage or a severability of interest clause in a commercially reasonable form; (v) provide that an act or omission of one of the insureds or additional insureds thereunder which would void or otherwise reduce coverage, shall not void or reduce coverage as to the other insureds or additional insureds; (vi) provide that the insurer thereunder waives any right of recovery by way of subrogation against Landlord, Landlord's agents, employees or contractors in connection with any loss or damage covered by such insurance policy; (vii) not contain any deductible provision in excess of One Thousand Dollars ($1,000.00); (viii) initially be for a term of one (1) year and shall contain an endorsement prohibiting cancellation, modification or reduction of coverage without first giving the additional insureds at least thirty (30) days prior written notice of such proposed action; and (ix) be in a commercially reasonable form.  Such policies shall be for the mutual and joint benefit and protection of Landlord, Tenant and others mentioned above, and executed copies of such policies of insurance or certificates (on Accord Form 27 and 28, as applicable, or substitute equivalents if no longer available) thereof shall be delivered by Tenant to Landlord prior to Tenant taking possession of the Premises.

**13.    INDEMNITY.**  Tenant hereby agrees to protect, indemnify, defend and save and hold Landlord and its agents, officers, directors and employees, harmless from and against all claims, demands, actions, causes of action, damages, judgments, penalties, costs, expenses and interest (including reasonable attorneys' fees and court costs) in favor of, or resulting from the claims of, third parties (including government agencies) and arising, directly or indirectly, in whole or in part, from: (i) the existence or operation of the convenience store business from the Premises; (ii) Tenant's negligence, recklessness or willful misconduct with respect to the Premises; or (iii) Tenant's breach of or failure to perform under this Lease and/or the Consignment Agreement.

The indemnification provisions set forth above shall survive expiration or termination of this Lease.

**14.    ASSIGNMENT OR SUBLEASE; MORTGAGEE RIGHTS.**  Tenant may not sell, assign, give, grant, devise or otherwise dispose of Tenant's interest in this Lease or sublet or license the Premises or any portion thereof, directly or indirectly, by operation of law or otherwise, to any other person or entity without Landlord's prior written consent, in Landlord's sole discretion. Tenant shall provide Landlord with thirty (30) days prior written notice of Tenant's desire to assign the Lease or to sublet the Premises. Notwithstanding any transfer, Tenant shall at all times remain directly and primarily liable for the payment of Rent and for compliance with all of its other obligations under this Lease.  Landlord may freely assign this Lease in whole or in part.

This Lease and the covenants and conditions herein contained shall inure to the benefit of and be binding upon Landlord, Tenant and their respective successors and assigns; provided, however, no rights shall inure to the benefit of any assignee or successor of Tenant to the extent such assignee or successor acquired any purported interest herein in violation of this Section 14.  Landlord shall provide Tenant written notice in the event Landlord conveys title to the Premises, or assigns Landlord's interest in this Lease to another party.  After receipt of such notice, Rent and other payments due and future notices to Landlord shall be given to the party designated therein and Tenant shall attorn to the new owner as substitute Landlord. Tenant shall, within ten (10) days of receipt of request, execute for Landlord an estoppel certificate concerning the terms of this Lease.  Upon any sale or other transfer by Landlord of its interest in the Premises, and assumption of possession of the Premises by the transferee, such transferee shall be solely responsible for all obligations of Landlord under this Lease accruing thereafter and Landlord shall be fully and forever released of its obligations hereunder.

Tenant agrees that if any mortgagee shall succeed to the interest of Landlord under this Lease, such mortgagee shall not be:      (a) liable for any act or omission of Landlord; (b) liable for the return of all or any part of the Security Deposit unless such Security Deposit has been turned over to the

## 816 ENGLAND STREET, ASHLAND, VA 23005 (PC 1401)

mortgagee; (c) subject to any offsets or defenses which Tenant might have against Landlord; (d) bound by any Rent which Tenant might have paid more than one month in advance; or (e) bound by any amendment or modification of this Lease made without such mortgagee's prior written consent.

**15.**    **EMINENT DOMAIN.**  If pursuant to the exercise of the right of condemnation or eminent domain, or any voluntary conveyance in lieu thereof (collectively, a **"Taking"**), (i) the Premises is taken or conveyed under threat of the exercising of such right, or (ii) only a portion of the Premises, is so taken or conveyed and the parties reasonably determine that the remainder of the Premises may no longer be reasonably operated as a convenience store, or (iii) Tenant's access to the Premises is materially and adversely reduced by such taking or conveyance, in Landlord's sole discretion, Tenant shall have the right to terminate this Lease.  Such termination shall be effective on the date Tenant is required to give up its occupancy, use, or access, whichever is earlier.  If all or any portion of the Premises shall be acquired by a Taking, Tenant shall be entitled to receive and retain any amounts for which it shall have a separate claim provided such award is made separately by Tenant to the condemning authority, or if that is not permitted in the jurisdiction, in the same actions, the parties to cooperate reasonably, but without reduction of the award otherwise due Landlord hereunder.  In the event of the termination of this Lease as aforesaid, neither Landlord nor Tenant shall have any claim against the other for the value of any unexpired portion of the Term and Tenant shall have no right or claim to any part of the award on account thereof.

In the event of a partial condemnation of the Premises and this Lease is not terminated as provided above, Landlord and Tenant shall agree upon an equitable reduction in the Base Rent.  If the parties fail to agree upon such reduction within one hundred twenty (120) days from the date Tenant is required to give up occupancy or use of the affected portion of the Premises, or access thereto, Landlord shall have the right to terminate this Lease, in its sole discretion.

Tenant and Landlord shall each have the right, at its own expense, to appear in any condemnation proceedings and to participate in any and all hearings, trials and appeals therein.  In the event the Landlord or the Tenant shall receive notice of any proposed or pending condemnation affecting the Premises, the party receiving such notice shall promptly notify the other party of the receipt and contents thereof.

**16.**    **ATTORNEYS' FEES.**  If suit is brought to enforce any terms, covenants or conditions of this Lease, the parties agree that the losing party shall pay the prevailing party's reasonable attorneys' fees, including reasonable attorneys' fees incurred in enforcing a judgment, which shall be fixed by the court and court costs.  As used herein, the term **"prevailing party"** shall mean the party, which has succeeded upon a significant issue in the litigation and achieved a material benefit with respect to the claims at issue, taken as a whole.  This obligation survives the termination or expiration of this Lease as to accrued claims.

## 17.  TENANT DEFAULT.

(a)    The following occurrences (individually, an **"Event of Default"** and collectively, the **"Events of Default"**) shall be deemed to be events of default under this Lease:

(i)    if Tenant shall fail to make any payment of Base Rent, additional rent or any other sum herein stipulated and agreed to be paid or kept, at the time same is required to be paid under the provisions of this Lease;

(ii)    Tenant shall fail to keep and perform any other non-monetary covenant, condition or agreement, herein provided on the part of Tenant to be performed and shall not cure such failure within fifteen (15) days after written notice thereof to Tenant;

DocuSign Envelope ID: 01FD5360-113F-45DE-9EC6-A14C55F9C8EE

| 816 ENGLAND STREET, ASHLAND, VA 23005 (PC 1401) |
|---|

(iii)     if Tenant defaults under any other agreement between Tenant and Landlord or any affiliate of Landlord (including but not limited to the Consignment Agreement);

(iv)     if Tenant shall desert or vacate any substantial portion of the Premises;

(v)     any petition shall be filed by or against Tenant or any guarantor of Tenant's obligations under this Lease under any section or chapter of the Bankruptcy Code or under any future Federal Bankruptcy Act or under any similar law or statute of the United States or any state thereof, or Tenant or any guarantor of Tenant's obligations under this Lease shall be adjudged bankrupt or insolvent in proceedings filed under any section or chapter of the Bankruptcy Code or under any future Federal Bankruptcy Act or under any similar law or statue of the United States or any state thereof and such petition has not been rescinded or dismissed within thirty (30) days from date of original filing;

(vi)     Tenant or any guarantor of Tenant's obligations under this Lease shall become insolvent or make a transfer in fraud of creditors;

(vii)     Tenant or any guarantor of Tenant's obligations under this Lease shall make an assignment for the benefit of creditors;

(viii)     a receiver or trustee shall be appointed for Tenant or any of the assets of Tenant; or

(ix)     Tenant or any of its partners, members, officers or directors is convicted of a felony or of a misdemeanor involving fraud, moral turpitude or commercial dishonesty, whether or not the crime arose from the operation of the Premises.

(b)     Upon each occurrence of an Event of Default, Landlord shall have the option to pursue, without any further notice or demand, any one or more of the following remedies and/or any other remedies to which Landlord is entitled at law or in equity:

(i)     Terminate this Lease by giving Tenant written notice thereof, in which event Tenant shall pay to Landlord the sum of (i) all Rent and other sums accrued hereunder through the date of termination, and (ii) an amount equal to (A) the total Rent and other sums that Tenant would have been required to pay for the remainder of the Term discounted to present value at a per annum rate equal to four percent (4%) and (iii) any other damages allowed by law owing to such event of default and termination;

DocuSign Envelope ID: 01FD5360-113F-45DE-9EC6-A14C55F9C8EE

| **816 ENGLAND STREET, ASHLAND, VA 23005 (PC 1401)** |
| --- |

(ii)     Terminate Tenant's right to possession of the Premises without terminating this Lease by giving written notice thereof to Tenant, in which event Tenant shall pay to Landlord (A) all Rent and other amounts accrued hereunder to the date of termination of possession, (B) all Rent and other sums required hereunder to be paid by Tenant during the remainder of the Term, diminished by any net sums thereafter received by Landlord through reletting the Premises during such period and (iii) any other damages allowed by law; or

(iii)     Enter upon and take possession of the Premises and expel or remove Tenant and any other person who may be occupying the Premises or any part thereof, by picking or changing locks, and locking out, expelling or removing Tenant or any other person who may be occupying all or a part of the Premises, without being liable for prosecution or any claim for damages therefore.  To the extent allowed by law, Tenant hereby waives any statutory requirement of prior written notice for filing eviction or damage suits for nonpayment of Rent.

(c)     To the extent allowed by law, Landlord shall be deemed to have mitigated its damages as required by the Texas Property Code, Section 91.006 if, within 45 days after Tenant no longer occupies the Premises, Landlord, to the extent it has access to the Premises, has (i) placed a **"For Lease"** sign at the Premises, (ii) placed the Premises in Landlord's inventory of available space, (iii) made the Premises available to show to area brokers during normal business hours and (iv) shown the Premises to prospective Tenants who requested to see it.  Without in any way limiting the foregoing, Tenant agrees that Landlord has no obligation to: (A) relet the Premises (1) at a rental rate or otherwise on terms below market, as then determined by Landlord in its sole discretion; (2) to any entity not satisfying Landlord's then standard financial credit risk criteria, in Landlord's sole discretion; (3) for a use (I) not consistent with Tenant's use prior to default; (II) which would violate then applicable law or any restrictive covenant; (III) which would involve any use of hazardous materials; or (B) make any alterations to the Premises or otherwise incur any costs in connection with any such reletting.

(d)     Landlord may restrain or enjoin any breach or threatened breach of any covenant, duty or obligation of Tenant herein contained without the necessity of proving the inadequacy of any legal remedy or irreparable harm.  The remedies of Landlord hereunder shall be deemed cumulative and not exclusive of each other.

(e)     If on account of any breach or default by Tenant in its obligations hereunder, Landlord shall employ an attorney to present, enforce or defend any of Landlord's rights or remedies hereunder, Tenant agrees to pay any reasonable attorney's fees and court costs incurred by Landlord in such connection.

(f)     In the event Tenant fails to make any payment due hereunder when payment is due, to help defray the additional cost to Landlord for processing such late payments, Tenant shall pay to Landlord on demand a late charge in an amount equal to five percent (5%) of such payment, together with interest at the rate of twelve percent (12%) per annum.  The provision for such late charge and interest shall be in addition to all of Landlord's other rights and remedies hereunder or at law and shall not be construed as liquidated damages or as limiting Landlord's remedies in any manner.  In addition to the 5% fee assessed previously in this paragraph, Landlord shall have the right to charge Two Hundred Dollars ($200.00) for each and every returned/bounced EFT draft, no matter the cause for such returned/bounced EFT draft.

(g)     Tenant shall compensate Landlord for all expenses incurred by Landlord in repossession (including, among other expenses, repairs, remodeling, replacements, advertisements and brokerage fees), all concessions granted to a new tenant upon reletting (including tenant allowances), all losses incurred by Landlord as a direct or indirect result of Tenant's default (including, among other losses, any adverse

| **816 ENGLAND STREET, ASHLAND, VA 23005 (PC 1401)** |
|---|

reaction by Landlord's mortgagee) and a reasonable allowance for Landlord's administrative efforts, salaries and overhead attributable directly or indirectly to Tenant's default and Landlord's pursuing the rights and remedies provided herein and under applicable law.

(h)    No waiver by Landlord of any breach by Tenant of any of Tenant's obligations, agreements or covenants hereunder shall be a waiver of any subsequent breach of any obligation, agreement or covenant, nor shall any forbearance by Landlord to seek a remedy for any breach by the Tenant be a waiver by Landlord of its rights and remedies with respect to such subsequent breach.

18.    **LANDLORD NON-RECOURSE.**  Notwithstanding any other provision hereof, neither Landlord nor its partners, employees or agents shall have any personal liability hereunder.  In the event of any breach or default by Landlord in any term or provision of this Lease, Tenant agrees to look solely to the equity or interest then owned by Landlord in the Premises; however, in no event, shall any deficiency judgment or any money judgment of any kind be sought or obtained against Landlord or any of its partners, employees or agents.

19.    **QUIET ENJOYMENT.**  Upon paying the Rent and performing the terms, covenants and conditions of this Lease, Tenant's peaceful and quiet possession of the Premises during the Term shall not be disturbed by Landlord or by anyone claiming by, through or under Landlord, subject to the terms and conditions of this Lease, any mortgage, and all matters of record, or any other agreements to which this Lease is or may hereafter be subordinated and except as to such portion of the Premises or Property, if any, as shall be taken under the power of eminent domain.  Subject to Section 20 of this Lease, Landlord covenants that it has good and marketable fee simple title (or leasehold interest) to the Premises and the Premises is free of all leases, tenancies and agreements affecting the rights granted Tenant in this Lease. Without limiting the foregoing, Landlord and Tenant acknowledge and agree that this Lease and all of Tenant's rights hereunder are subject to the terms and conditions of all matters of record affecting the Premises and Tenant shall comply with such matters.

20.    **SUBORDINATION.**  Tenant agrees that its leasehold interest hereunder is subject and subordinate to any mortgages or similar encumbrances now on, or hereafter to be placed on, the Premises. The provisions of this Section 20 shall be self-operative and no further instrument of subordination shall be required.  Tenant agrees to comply within a reasonable period of time (not to exceed ten (10) days) with reasonable requests for execution of documentation to (i) effect the subordination of its leasehold interest; (ii) evidence its agreement to attorn to any party succeeding to Landlord's interest in the Premises, whether by purchase, foreclosure, deed in lieu of foreclosure, power of sale, termination of Lease, or otherwise; and (iii) such other matters as Landlord's mortgagee may reasonably require.

21.    **LANDLORD'S LIEN AND SECURITY INTEREST.**  Landlord shall have a Landlord's statutory lien, and in addition, Landlord shall have, and Tenant hereby grants unto Landlord, a security interest in all of the goods, wares, furniture, fixtures, office equipment, supplies, and other property owned by Tenant and now or hereafter placed in, upon, or about the Premises, and all proceeds arising from the sale, lease or other disposition of any such property (including, but not limited to, proceeds payable under any policies of insurance covering any such property), as security for all of the obligations of Tenant under this Lease. Except for sales in the ordinary course of Tenant's business, Tenant shall not remove any of the above-described property from the Premises until all of Tenant's obligations under this Lease have been satisfied in full.  Without excluding any other manner of giving Tenant any required notice, any requirement of reasonable notice to Tenant of Landlord's intention to dispose of any collateral pursuant to the enforcement of the security interest hereby granted shall be met if such notice is given at least five (5) days before the time of any such disposition. Any sale made pursuant to the enforcement of said security interest shall be considered to have been a public sale conducted in a commercially reasonable manner if held at the Premises after the time, place, and method of sale and a general

## 816 ENGLAND STREET, ASHLAND, VA 23005 (PC 1401)

description of the collateral to be sold have been advertised in a local major daily newspaper published in the county in which the Premises is located for five (5) consecutive days before the date of sale. Landlord shall have all of the rights and remedies of a secured party under the Texas Uniform Commercial Code and shall be and is authorized to file a financing statement in form reasonably acceptable to Landlord.

22.   **WAIVER OF LIEN.** Tenant waives all lien rights under Section 91.004 of the Texas Property Code, as well as any successor statute granting Tenant a lien in Landlord's property.

23.   **BANKRUPTCY.** Should Tenant make an assignment for the benefit of its creditors, or seek an order for relief under the United States Bankruptcy Code, Landlord, at its option, may terminate all rights of Tenant under this Lease, if permitted by applicable law.

24.   **NOTICES.** All notices required or permitted hereunder shall be in writing and delivered either: (i) personally; (ii) by certified or registered mail, return receipt requested, postage prepaid; or (iii) by a recognized overnight courier service (such as Federal Express), addressed as follows:

|  |  |
|---|---|
| **LANDLORD:** | **Sunoco North Carolina Acquisition II, LLC**<br>8350 N. Central Expressway, Suite M2185<br>Dallas, Texas 75206<br>Attention: Legal Department |
| **With a Copy to:** | **Empire Petroleum Partners, LLC**<br>9055 Comprint Court, Suite 200<br>Gaithersburg, Maryland 20877<br>Attention: Legal Department |
| **TENANT:** | **Nadiad, Inc.**<br>c/o Vishal Patel<br>2900 Knights Road<br>Bensalem, Pennsylvania 19020 |

25.   **RECORDATION.** This Lease shall not be filed for public record. However, if either party desires to record a memorandum of lease, or any amended memorandum of lease, such party shall do so at its own cost and expense. Upon termination of this Lease by expiration or otherwise, Landlord and Tenant shall execute, acknowledge and deliver the necessary documents to release of record any such memorandum of lease. Tenant hereby constitutes and appoints Landlord its true and lawful attorney-in-fact in Tenant's name (which power of attorney shall be deemed irrevocable and a power coupled with an interest) to execute any and all documents necessary to remove the Lease and/or lease memorandum from record.

26.   **NO BROKER.** Landlord and Tenant covenant warrant and represent that no broker has been involved in the negotiation or consummation of this Lease. Tenant and Landlord each agree to indemnify and hold the other harmless from and against all causes of action and liabilities arising out of a claim for a commission by any broker purporting to have acted on behalf of the indemnifying party.

27.   **OFAC.** Neither Tenant nor any of its affiliates, nor any other of their respective partners, members, shareholders or other equity owners, and none of their respective employees, officers, directors, representatives or agents, is a person or entity with whom U.S. persons or entities are restricted from doing business under regulations of the Office of Foreign Asset Control ("**OFAC**") of the Department of Treasury (including those named on OFAC's Specially Designated and Blocked Persons List) or under any statute, executive order (including the September 24, 2001, Executive Order Blocking Property and

| 816 ENGLAND STREET, ASHLAND, VA 23005 (PC 1401) |
| --- |

Prohibiting Transactions with Persons Who Commit, Threaten to Commit, or Support Terrorism), or other governmental action.

**28.     FORCE MAJEURE.** Neither party shall be required to perform any term, covenant or condition of this Lease (except that Tenant shall in no event be relieved of its obligation to pay the Rent or any other monetary obligations to Landlord as required hereunder) so long as such performance is delayed or prevented by force majeure, which shall mean any acts of God, strike, lockout, material or labor restriction by any governmental authority, civil riot, and any other cause not reasonably within the control of such party and which by the exercise of due diligence such party is unable, wholly or in part, to prevent or overcome.  Delays or failures to perform resulting from lack of funds shall never be deemed delays beyond the reasonable control of a party.

**29.     HOLDOVER.**  Should Tenant remain in possession of the Premises after the expiration of the Term, Tenant shall be deemed to be occupying the Premises as a month-to-month Tenant on otherwise on the same terms herein, but at a monthly base rental equal to 150% of the daily rent payable during the last month of the Term and Tenant agrees to surrender the Premises after the expiration or earlier termination of the Term without demand by Landlord in broom-clean condition and in good repair, and shall return to Landlord any and all keys (including, without limitation, access cards) furnished to, or otherwise procured by, Tenant relating in any way to the Premises.

**30.     INSPECTION.**  Tenant shall permit Landlord and its agents (along with prospective purchasers and mortgagees) to enter into and upon the Premises at all reasonable times and upon reasonable notice for the purpose of inspecting the same on the condition that Tenant's business is not materially interfered with.

**31.     APPLICABLE LAW.**  The laws of the State of Texas shall govern the validity, performance and enforcement of this Lease.  Tenant hereby consents to the jurisdiction of any court located within Dallas, Texas, and hereby consents that such service may be made by registered or certified mail, directed to Tenant at the address set forth herein.     The invalidity or unenforceability of any provision of this Lease shall not affect or impair any other provision.

**32.     AS-IS LEASE.  TENANT ACKNOWLEDGES THAT NEITHER LANDLORD NOR ITS REPRESENTATIVES HAVE MADE ANY REPRESENTATIONS OR WARRANTIES AS TO THE PREMISES OR ITS PHYSICAL CONDITION UPON WHICH TENANT HAS RELIED. TENANT FURTHER ACKNOWLEDGES AND AGREES THAT EXCEPT AS SET FORTH IN THIS LEASE, LANDLORD HAS NOT MADE, DOES NOT MAKE, AND EXPRESSLY DISCLAIMS, ANY WARRANTIES, REPRESENTATIONS, COVENANTS OR GUARANTIES, EXPRESSED OR IMPLIED, OR ARISING BY OPERATION OF LAW, AS TO THE MERCHANTABILITY, HABITABILITY, QUANTITY, QUALITY OR CONDITION OF THE PREMISES OR ITS SUITABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE OR USE. TENANT AFFIRMS THAT IT (I) WILL HAVE THE OPPORTUNITY TO INVESTIGATE AND INSPECT THE PREMISES IN ORDER TO FAMILIARIZE AND SATISFY ITSELF, WITH THE PHYSICAL CONDITION OF THE PREMISES AND (II) WILL MAKE ITS OWN DETERMINATION AS TO (A) THE MERCHANTABILITY, QUANTITY, QUALITY AND CONDITION OF THE PREMISES, AND (B) THE PREMISES' SUITABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE OR USE.  SUBJECT TO TENANT'S RIGHTS SET FORTH IN THIS LEASE, TENANT HEREBY ACCEPTS THE PREMISES IN ITS PRESENT CONDITION "AS IS," "WHERE IS" AND "WITH ALL FAULTS" AND LANDLORD SHALL HAVE NO DUTY TO MAKE ANY MODIFICATIONS OR IMPROVEMENTS TO THE PREMISES.**

DocuSign Envelope ID: 01FD5360-113F-45DE-9EC6-A14C55F9C8EE

| 816 ENGLAND STREET, ASHLAND, VA 23005 (PC 1401) |
| --- |

**33.    WAIVER OF JURY TRIAL.    TO INDUCE LANDLORD AND TENANT TO ENTER INTO THIS LEASE, LANDLORD AND TENANT EACH HEREBY WAIVE ANY RIGHT TO A TRIAL BY JURY OF ANY OR ALL ISSUES ARISING IN ANY ACTION OR PROCEEDING BETWEEN LANDLORD AND TENANT OR THEIR SUCCESSORS, ASSIGNS, PERSONAL OR LEGAL REPRESENTATIVES AND HEIRS UNDER OR IN CONNECTION WITH THIS LEASE OR ANY OF ITS PROVISIONS. THIS WAIVER IS KNOWINGLY, INTENTIONALLY AND VOLUNTARILY MADE BY LANDLORD AND TENANT, AND LANDLORD AND TENANT EACH ACKNOWLEDGE THAT NEITHER LANDLORD NOR TENANT NOR ANY PERSON ACTING ON BEHALF OF LANDLORD OR TENANT HAS MADE ANY REPRESENTATIONS OF FACT TO INDUCE THIS WAIVER OF TRIAL BY JURY OR IN ANY WAY TO MODIFY OR NULLIFY ITS EFFECT. LANDLORD AND TENANT EACH FURTHER ACKNOWLEDGE THAT HE, SHE OR IT HAS HAD THE OPPORTUNITY TO DISCUSS THIS LEASE WITH LEGAL COUNSEL.**

**34.    COMPLETE AGREEMENT.**  This Lease merges all prior negotiations and understandings between the parties relating to the subject matter of this Lease and constitutes their complete agreement which is binding upon Landlord and the heirs, executors, administrators, successors and assigns of Landlord when executed by Landlord, and is binding upon Tenant, its successors and assigns, once executed by Tenant, regardless of any written or verbal representation of any agent, manager or other employee of Tenant to the contrary.  This Lease may only be amended by written agreement signed by Landlord and Tenant.

**35.    STATUS OF TENANT AND FINANCIAL STATEMENTS.**  By virtue of its execution of this Lease, any individual executing this Lease on behalf of Tenant represents and warrants that he/she holds the title noted below his/her signature and that he/she is authorized and empowered by all necessary legal means, including corporate, partnership, or company action (as applicable), and under applicable law, to execute and deliver this Lease on behalf of such entity and to bind such entity to its obligations hereunder. Tenant will remain qualified to do business and in good standing throughout the Term in the state in which the Premises is located.  If the applicable entity is not qualified as stated herein, or is not duly existing, the individual(s) signing on behalf of such entity hereby acknowledge and agree that they individually, jointly and severally, shall be responsible for all terms, covenants, and obligations of this Lease, in addition to said entity until such time as the applicable entity is properly qualified or duly existing.  Within ten (10) days of receipt of a request therefor from Landlord, Tenant shall forward to Landlord a financial statement for its most recent completed fiscal year of Tenant and/or, if applicable, Tenant's guarantor or surety, in form satisfactory to Landlord, certified by an independent certified public accountant acceptable to Landlord, together with the prior year statement of gross sales from the Premises.

**36.    ACKNOWLEDGEMENT OF CO-TENANT.**  Tenant hereby acknowledges that Landlord currently leases a portion of the Premises consisting of approximately 900 square feet of the convenience store building (the "**Restaurant Space**").  Tenant hereby agrees to cooperate in the operations of the Premises with the operator of the Restaurant Space and that all customers, suppliers, contractors or invitees of either party shall have access to the Premises and privileges of passage at all reasonable times. This Section 36 shall apply to any successive operators at the Restaurant Space during the Term hereof.

**37.    INVENTORY PURCHASE.**  At the inception of the Term, Landlord shall arrange for an auditor to audit the merchandise and supplies on the Premises ("**Inventory**").  Tenant agrees to purchase from Landlord all Inventory, at such prices to be determined as follows:

| | |
| --- | --- |
| grocery items - | at retail less 35%; |
| package beverages - | at retail less 38%; |

DocuSign Envelope ID: 01FD5360-113F-45DE-9EC6-A14C55F9C8EE

| **816 ENGLAND STREET, ASHLAND, VA 23005 (PC 1401)** |
|---|

dairy items -                           at retail less 27%;
candy and snacks -                      at retail less 45%;
HBA -                                   at retail less 45%;
fountain/frozen/coffee cups -           at retail less 50%;
general merchandise -                   at retail less 50%;
alcoholic beverages -                   at retail less 25%; and
cigarettes and supplies -               at actual cost to Landlord.

A copy of the auditor's inventory report will be attached hereto as **Exhibit E**.  Tenant agrees to provide a certified cashier's check for the purchase amount of all Inventory on or before the Rent Commencement Date.


**SIGNATURE PAGE TO FOLLOW**

DocuSign Envelope ID: 01FD5360-113F-45DE-9EC6-A14C55F9C8EE

---

## 816 ENGLAND STREET, ASHLAND, VA 23005 (PC 1401)

IN WITNESS WHEREOF, the parties hereto have caused this Lease to be executed under seal by their respective duly authorized representatives on the day and year written below.

**WITNESS:**

By: _____
Name: Darshan Patel

**TENANT:**

**NADIAD, INC.,**
a Virginia corporation

By: _____
Name:  Vishal Patel
Title:  President
FEIN:  47-5218775

Date: 10/25/2015

**WITNESS:**

_____
Name: _____

**LANDLORD:**

**SUNOCO NORTH CAROLINA ACQUISITION II, LLC**
a Maryland limited liability company

By:  Empire Petroleum Partners, LLC
Its:  Sole Member

By: _____
Name:  Jeff Goodwin
Title:  Chief Operating Officer

Date: 10/26/2015

**EXHIBITS:**

Exhibit A – Legal Description
Exhibit B – Consignment Agreement
Exhibit C – Commencement Date Acknowledgement
Exhibit D – EFT Agreements
Exhibit E – Auditor's Inventory Report

DocuSign Envelope ID: 01FD5360-113F-45DE-9EC6-A14C55F9C8EE

| 816 ENGLAND STREET, ASHLAND, VA 23005 (PC 1401) |
| --- |

### Exhibit A

### LEGAL DESCRIPTION

All of that certain lot or parcel of land lying and being in Ashland District of Hanover County, Virginia, and designated as Lot A on a "Plat of Property Lying on the North Side of Route 54 East of the Town of Ashland in Ashland District, Hanover County, Virginia, Partitioned from the land of Elizabeth Carter", made by William Hugh Radd, Surveyor, dated December 23, 1962, and more particularly described as follows:

BEGINNING at a point on the North line of Route 54 at Highway Section 108 plus 75.9 as shown on said plat, and thence running along and fronting on the North line of Route 54 in a Southwesterly direction 200 feet to a point, thence North 6 degrees 15 minutes West 150 feet to a point, thence North 77 degrees 41 minutes 54 seconds East 200 feet to a point, thence South 5 degrees 15 minutes East 150 feet to the point of beginning.

TOGETHER with all right, title, and interest of Elizabeth D. Carter, widow, in and to any land lying in the bed of Route 54 in front of said premises to the center line thereof.

LESS AND EXCEPT that portion of property as described by metes and bounds in deed 89 conveyed by Humble Oil & Refining Company, a Delaware corporation, to Virginia Trust Company, Executor of the Estate of James Ferrell Luck, deceased, dated December 16, 1969, recorded January 16, 1970, in the aforesaid Clerk's Office in Deed Book 295, Page 15.

Being a portion of the same real estate conveyed to Humble Oil & Refining Company, a Delaware corporation, by deed from Elizabeth D. Carter, widow, recorded December 31, 1962, in the Clerk's Office, Circuit Court, Hanover County, Virginia, in Deed Book 220, Page 469. The said Humble Oil & Refining Company, a Delaware corporation, merged with and into Exxon Corporation, a New Jersey corporation, by Certificate of Merger dated December 18, 1972 and recorded in the aforesaid Clerk's Office in Deed Book 440, Page 82. EXXON CORPORATION MERGED WITH MOBIL OIL CORPORATION TO FORM EXXON MOBIL CORPORATION IN FEBRUARY OF 2000.

DocuSign Envelope ID: 01FD5360-113F-45DE-9EC6-A14C55F9C8EE

| 816 ENGLAND STREET, ASHLAND, VA 23005 (PC 1401) |
| --- |

**Exhibit B**

**CONSIGNMENT AGREEMENT**

DocuSign Envelope ID: 01FD5360-113F-45DE-9EC6-A14C55F9C8EE

| 816 ENGLAND STREET, ASHLAND, VA 23005 (PC 1401) |
|---|

### Exhibit C

### COMMENCMENT DATE ACKNOWLEDGEMENT

Landlord and Tenant hereby acknowledge and agree that the Rent Commencement Date for the Term shall be the 28th day of October, 2015 and the expiration date of the Term shall be the 27th day of October, 2016.

**WITNESS:**

By: _____
Name: Darshan Patel

**TENANT:**

**NADIAD, INC.,**
a Virginia corporation

By: _____
Name:  Vishal Patel
Title:    President
FEIN:    47-5218775

Date: 10/25/2015

**WITNESS:**

Name: _____

**LANDLORD:**

**SUNOCO NORTH CAROLINA ACQUISITION II, LLC,**
a Maryland limited liability company

By:  Empire Petroleum Partners, LLC
Its:  Sole Member

By: _____
Name:  Jeff Goodwin
Title:   Chief Operating Officer

Date: 10/26/2015

DocuSign Envelope ID: 01FD5360-113F-45DE-9EC6-A14C55F9C8EE

**816 ENGLAND STREET, ASHLAND, VA 23005 (PC 1401)**

### Exhibit D

### EFT AGREEMENTS

(*to be attached*)

DocuSign Envelope ID: 01FD5360-113F-45DE-9EC6-A14C55F9C8EE

| **816 ENGLAND STREET, ASHLAND, VA 23005 (PC 1401)** |
| --- |

<u>**Exhibit E**</u>

<u>**AUDITOR'S INVENTORY REPORT**</u>

(*to be attached*)